IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

BRANDI CRAWFORD-JOHNSON, JAMES KING, KEVIN FANNIN and CEJUWON MCFERRIN, on behalf of themselves and all others similarly situated,

    Plaintiffs,

vs.

GRAPHIC PACKAGING INTERNATIONAL, LLC.,

    Defendant.

Case No.

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiffs Brandi Crawford-Johnson, James King, Kevin Fannin, and CeJuwon McFerrin, on behalf of themselves and all others similarly situated ("Plaintiffs"), bring this class action against Graphic Packaging International, LLC ("Defendant"), which owns and operates an industrial paper mill located at 1500 North Pitcher Street, Kalamazoo, Michigan (the "Facility").

2. Through its operation and maintenance of the Facility, Defendant released, and on frequent separate, distinct, and additional occasions continues to release, noxious odors, air particulates, and fugitive dust onto Plaintiffs' property, which caused property damage by nuisance and negligence.

### PARTIES

3. Plaintiff, Brandi Crawford-Johnson, does reside and at all relevant times has resided at 1625 N. Church Street, City of Kalamazoo, County of Kalamazoo, State of Michigan.

4. Plaintiff, James King, does reside and at all relevant times has resided at 1717 Union Street, City of Kalamazoo, County of Kalamazoo, State of Michigan.

5. Plaintiff, Kevin Fannin, does reside and at all relevant times has resided at 1410 Princeton Avenue, City of Kalamazoo, County of Kalamazoo, State of Michigan.

6. Plaintiff, CeJuwon McFerrin, does reside and at all relevant times has resided at 621 Church St., Apt. 1, City of Kalamazoo, County of Kalamazoo, State of Michigan.

7. Defendant is a for-profit corporation organized under the laws of the State of Delaware and maintains its principal place of business in the State of Georgia.

8. The Facility is located at 1500 North Pitcher Street, Kalamazoo, MI 49007.

9. At all relevant times, Defendant, its agents, and its predecessors did and continues to do business in Kalamazoo, Michigan.

10. Defendant, including its predecessors and agents, constructed the Facility and exercised control and ownership over the Facility at all relevant times hereto.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. §1332(d). There are 100 or more class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6. Plaintiffs are citizens of Michigan, and Defendant is a citizen of Delaware and Georgia.

7. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

8. The Court has personal jurisdiction over Defendant, who has at least minimum contacts with the State of Michigan because it regularly conducts substantial business in Michigan through the ownership and operation of the Facility.

9. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much of the property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

10. Defendant operates an industrial paper mill surrounded by residential properties.

11. Plaintiffs reside within 1.5 miles of the Facility.

12. On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiffs' property including Plaintiffs' neighborhoods, residence, and yards have been, and continue to be, physically invaded by noxious odors and physically tangible particulate fallout including calcite, dust, ash, and/or dirt (hereinafter "air particulates and fugitive dust").

13. The noxious odors, air particulates, and fugitive dust which entered Plaintiffs' property originated from Defendant's paper mill.

14. Defendant produces hundreds of thousands of tons of paper annually, utilizing multiple paper machines that have independent, distinct processes for producing recycled paperboard and other paper products.

15. The K1 paper machine produces paper in three layers: a top layer that accepts coating, a filler layer, and a bottom layer. This machine is located on the north side of the property. It is capable of producing 1,000 tons of paper per day.

16. The K3 paper machine is an 8-layer machine. It can produce one-third of what K1 can.

17. K1 has a drying oven while K3 uses presses to remove water.

18. Defendant's industrial process produces substantial quantities of wastewater and waste sludge.

19. Defendant operates a wastewater treatment plant on-site with one clarifier, which diverts the wastewater back into the plant or an off-site facility for additional treatment.

20. Defendant funnels substantial quantities of wastewater into and out of its open-air clarifier, which is separated into a sludge that is stored and treated on-site prior to being disposed in a landfill.

21. Defendant produces multiple types of paper pulp for use in its products, utilizing four hydropulpers, which are fed into a paper machine or stored until needed for production.

22. Each hydropulper produces pulp for a different paper mix.

23. Each type of pulp is stored separately in a vat tank before being pumped to one of Defendant's paper machines.

24. Defendant collects and stores large quantities of recycled paper material on site, which it uses to produce the raw pulp material.

25. If not properly stored, treated, and maintained, Defendant's raw pulp and/or raw materials produce volatile organic compounds and gases that can become noxious and highly odiferous.

26. Defendant operates a treatment plant where the paper pulp manufacturing and/or paper machine's wastewater is filtered.

27. The odiferous gases created through Defendant's paper manufacturing process, including the creation of pulp and wastewater and waste sludge, have distinctive odors and gases which are frequently described as having a characteristic "rotten egg" or "rotten cabbage" smell.

28. Defendant also operates numerous boilers, which produce substantial quantities of atmospheric pollutants, which must be treated and/or controlled in order to prevent noxious off-site emission of air particulates and fugitive dust.

29. Defendant's operation and maintenance of the Facility has substantially changed within the past two years and production has substantially increased during that time.

30. In 2019, Defendant initiated the construction of a K2 paper machine which will aim to increase Defendant's paper output by approximately 500,000 tons per year.

31. A properly constructed, operated, and maintained industrial paper mill will not emit noxious odors, air particulates, and fugitive dust into the ambient air as fugitive emissions.

32. On numerous separate and distinct occasions within the past three years, Defendant has discharged discrete and offensive noxious odors, air particulates, and fugitive dust into the private residential properties of Plaintiffs and the Class, causing damages to property.

33. More than 100 neighboring residents have reported to Plaintiffs' counsel that they are repeatedly and adversely impacted by Defendant's odors, air particulates and/or fugitive dust.

34. At least 74 neighboring residents have reported to Plaintiffs' counsel that they experience both noxious odors and air particulate/dust fallout.

35. Plaintiff Brandi Crawford-Johnson is an owner/occupant of residential property at 1625 N. Church Street, located within one-and-one-half miles from Defendant's Facility. Ms. Crawford purchased and moved into this residence for the first time in 2020.

36. Plaintiff Brandi Crawford-Johnson reported that "The smell is unbearable. I can't enjoy my yard because the odor causes me to stay indoors with air purifiers."

37. Plaintiff James King is an owner/occupant of residential property at 1717 Union Street, within one-and-one-half miles of Defendant's Facility.

38. Plaintiff James King reported that "The odor smells bad, burns my eyes, constant coughing. Can't invite people over for BBQ because it smells."

39. Plaintiff Kevin Fannin is an owner/occupant of residential property at 1410 Princeton Street, within one-and-one-half miles of Defendant's Facility.

40. Plaintiff CeJuwan McFerrin is a renter of residential property located at 1629 N. Church Street, within one-and-one-half miles of Defendant's Facility. Mr. McFerrin moved into this residence in the winter of 2020.

41. Plaintiff CeJuwon McFerrin reported that "Particles/fallout settle on vehicle and outdoor items and smell like chemicals everyday and the air quality is horrible."

42. The invasion of Plaintiffs' property by noxious odors, air particulates and fugitive dust has caused Plaintiffs and the Class substantial harm. A small sampling of the statements provided to Plaintiffs' counsel by members of the putative class document the following factual allegations:

   a. On August 3, 2020, putative class members Jason Tinklenberg and Beth Goodsell reported that "I've been noticing more than usual fiber type fallout in the air. At time the air and fibers being released in the still of the night is so thick it's much harder to breath in fresh air."

   b. On August 7, 2020 putative class member Terry Milnes reported that "My family and I could not even go outside period. The smell and residue on my house and vehicles was unbearable!!"

   c. Putative class members Ekimbrea and Bobby Courillion reported the following regarding the odors from the Facility: "It's like a rotten smell of some sort; interferes with sitting outside."

    d. On August 4, 2020 putative class members Nayakia and Dion Bates reported that "The fallout is like shredded paper falling and the odor is so horrible we can't enjoy our backyard for parties or bbq's."

    e. On August 4, 2020, putative class members Craig and Denise Hays reported that the odor from the facility "Makes me want to puke; can't breathe. Backyard smells like an outhouse sometimes."

43. Defendant's well-documented history of failing to control its emissions is further demonstrated by the following:

    a. On April 17, 2018, Defendant received a Rule 901 Notice of Violation (NOV) from the Michigan Department of Environmental Quality ("MDEQ") for its emission of "[s]trong and persistent odors" that were "detected off-site." This NOV was in response to multiple resident odor complaints received on or around April 16, 2018. "The AQD staff detected odors east of the Facility at Borgess Medical Center, along Riverview Drive and the recreational trail that runs parallel to the river, and in the Riverside Cemetery in Kalamazoo, Michigan." The odors were attributed to Defendant's "Mill Operations."

    b. On May 14, 2019, the EGLE Air Quality Division again issued Defendant a Rule 901 NOV because "[s]trong and persistent odors" that were "detected off-site."

    c. The multiple NOVs led to an Enforcement Notice in July of 2019 in which the state required Defendant to take remedial steps and pay fines.

    d. Numerous media articles have documented persistent resident complaints regarding Defendant's odors that have risen to a level of widespread public concern.

  e. Public hearings were held before the Kalamazoo City Commission, which formed an odor task force to investigate and fix the odor problem. At least one city commissioner repeatedly experienced Defendant's "debilitating smell."

  f. A June 2020 report was prepared for the City of Kalamazoo by engineering firm Jones & Henry (J&H), which concluded that Defendant released hydrogen sulfide gas "well above the odor threshold" from its open-air wastewater pre-treatment clarifier. The engineering firm identified Defendant's junction chamber as a key problem spot for odors, from which turbulent mixing generated and emitted substantial quantities of hydrogen sulfide gases. The report recommended $490,000 in upgrades but warned that "even with the solutions recommended by J&H, odors will continue to be released from the open clarifier."

  g. Data was collected by City of Kalamazoo data sensors, which routinely registered hydrogen sulfide levels above the minimum risk level of 0.02 parts per million set by federal standards.

  h. In July 2020, Defendant hired outside consultants to undertake an eight-week odor investigation study.

  i. During EGLE inspections, Defendant's own plant manager acknowledged the off-site odors created by the Facility.

44. Defendant's Facility has emitted, and continues to emit, objectionable odors, air particulates, and fugitive dust that are detectable outside the bounds of its property.

45. Defendant has long known and on numerous occasions acknowledged that it is the source of off-site odors.

46. The Facility has emitted objectionable odors, air particulates, and fugitive dust that have caused negative impacts to its neighbors, including Plaintiff and the putative class, and their properties.

47. Defendant's emissions have been dispersed across private and public land throughout the Class Area.

48. The foul odors, air particulates, and fugitive dust emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiff and the Class to use and enjoy their homes and property.

49. The invasion of Plaintiff's property and that of the Class by noxious odors has caused physical property damages to private residential property, including diminution of property values, deprivation of Plaintiff and the Class' enjoyment of the full value of their properties, and substantial and unreasonable interference with the use and enjoyment of their properties.

50. Kalamazoo County and the Class Area are home to a wide range of commercial and recreational activities including but not limited to dining, industry, construction, retail trade, lodging, ministry, and education.

51. Plaintiffs and the Class are a limited subset of individuals in Kalamazoo County and the Class Area that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

52. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors, air particulates and fugitive dust emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside

of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

53. Defendant's operation, maintenance, control, and/or use of its Facility has caused noxious odors, air particulates and fugitive dust to invade the properties of Plaintiffs, and all others similarly situated, causing property damage.

54. Defendant has failed to employ adequate technologies, systems, processes, and odor mitigation strategies to prevent the odors, air particulates, and fugitive dust generated at its mill from traveling offsite

55. Defendant negligently, unreasonably, knowingly, intentionally, and/or recklessly failed to properly maintain and/or operate the Facility, and caused the invasion of Plaintiffs' property by noxious odors, air particulates and fugitive dust on intermittent and reoccurring dates too numerous to individually recount.

56. Defendant is vicariously liable for all damages suffered by Plaintiffs caused by Defendant's employees, representatives and agents, who, during the course and scope of their employment created, allowed or failed to correct the problem(s) which caused noxious odors, air particulates and fugitive dust to physically invade Plaintiffs' property.

## CLASS ALLEGATIONS

### A. Definition of the Class

57. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seeks to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one and one-half miles (1.5) of the Facility's property boundary.**

The proposed class boundary is subject to modification as discovery progresses. Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

### B. Numerosity

58. There are more than 1,000 households within one-and-one-half miles of the Facility. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

59. Prosecution of separate lawsuits by Class members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is therefore appropriate.

### C. Commonality

60. Defendant has engaged in a uniform and common course of misconduct towards members of the Class, giving rise to questions of both law and fact common to all Class members, including but not limited to:

    a. Whether and how Defendant negligently, intentionally, recklessly, and willfully failed to maintain and/or operate the Facility;

    b. Whether Defendant owed any duties to Plaintiffs;

    c. Which duties Defendant owed to Plaintiffs;

    d. Which steps Defendant has and has not taken in order to control its emissions through the maintenance and/or operation of its facility;

    e. Whether and to what extent the Facility's emissions were dispersed over the class area;

    f. Whether it was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in an invasion of Plaintiffs'

      property interests;

  g. Whether the degree of harm suffered by Plaintiffs and the class constitutes a substantial annoyance or interference; and

  h. The proper measure of damages incurred by Plaintiffs and the Class.

### D. Typicality

61. The claims of the named Plaintiffs are claims typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories, and seek the same type of relief.

62. The claims of Plaintiffs and the other Class members have a common cause and their damages are of the same type. The claims originate from the same failures of the Defendant to properly maintain and/or operate the facility.

63. All Class members have suffered injury in fact as a result of the invasion of their properties by noxious odors, air particulates and fugitive dust emitted by Defendant. The noxious odors, air particulates and fugitive dust emitted by Defendant, interferes with their ability to use and enjoy their homes, has impacted property values, and has deprived the Class of the full value of their properties.

### E. Adequacy of Representation

64. Plaintiffs' claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

65. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class members.

### F. Class Treatment Is The Superior Method of Adjudication

66. A class action is superior to other methods of litigation and will provide a fair and efficient method for adjudication of the controversy because:

   a. Individual claims by the Class members would be impracticable as the costs of pursuit would far exceed what any one Class member has at stake;

   b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   c. The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

   d. The proposed class action is manageable.

## COUNT I

### NUISANCE

67. Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

68. Plaintiffs utilized their property as a residence and reside within the Class Area.

69. Through the operation of its facility, Defendant processes waste paper to produce paper pulp, Defendant processes the pulp into a variety of products using a system of boilers, steam starch cookers, and paper machines. Defendant's process involves a variety of ventilation and

filtration systems and creates substantial quantities of wastewater and sludge that is highly noxious and odiferous if not properly stored, maintained, and controlled.

70. A condition or activity which unreasonably interferes with the use and enjoyment of property is a nuisance.

71. Plaintiffs utilized their property as a residence and reside within the Class Area.

72. By failing to reasonably design, operate, repair, and maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious odors on unusually frequent occasions that are too numerous to individually list herein.

73. Defendant's substantial and unreasonable interference with the use and enjoyment of Plaintiffs' properties through its emissions constitutes both a public and/or private nuisance.

74. Plaintiffs did not consent for noxious odors, air particulates and fugitive dust to physically invade their property.

75. By causing noxious odors, air particulates and fugitive dust accumulated and controlled by Defendant to physically invade Plaintiffs' property, Defendant substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their property.

76. The noxious odors, air particulates, and fugitive dust invading Plaintiffs' property are indecent and offensive to Plaintiffs, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiffs' property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

77. Defendant knew that it was emitting noxious odors, air particulates, and fugitive dust onto neighboring properties, yet failed to take reasonably adequate steps to abate the nuisance.

78. Defendant owed and continues to owe a duty to Plaintiffs and the Class, as neighboring private residential property holders, to prevent and abate the interference with and the

invasion of their private residential property.

79. The public has a right to breathe unpolluted and uncontaminated air.

80. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public air and spaces by emitting noxious pollutants, air particulates, and fugitive dust into the ambient air.

81. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' properties have been physically invaded by noxious odors, air particulates and fugitive dust.

82. As a direct and proximate result of Defendant's negligence in operating and/or maintaining its facility, Plaintiffs' properties have been exposed to and invaded by noxious odors, air particulates and fugitive dust.

83. As a direct and proximate result of the invasion of Plaintiffs' private residential properties by noxious odors, air particulates and fugitive dust, Plaintiffs have suffered physical property damage, including through diminution in property value, deprivation of full value of property, and interference with use and enjoyment of property.

84. Apart from the private residential property damages incurred by Plaintiffs and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

85. Plaintiffs suffered and continue to suffer special harm relating to the use and enjoyment of their land and property, deprivation of the full value of their property, and decreased property values—damages that are of a different kind and are additional to those suffered by the public at-large.

86. Whatever social utility provided by the Facility is clearly outweighed by the harm

suffered by Plaintiffs and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the use and value of their properties.

87. Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a nuisance for which the Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory and injunctive relief.

## COUNT II

### NEGLIGENCE

88. Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

89. In maintaining, operating, and/or controlling its facility, Defendant has a duty to Plaintiffs and the Class, as neighboring holders of private residential property interests, to exercise ordinary care and diligence so that noxious odors, air particulates and fugitive dust do not invade their properties.

90. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly maintained and/or operated its facility and knew, or should have known, that such actions would cause Plaintiffs' property to be invaded by noxious odors, air particulates and fugitive dust.

91. Defendants breaches of its duties to Plaintiffs and the Class include, but are not limited to:

   a. Defendant has failed to properly maintain, or operate its paper machines, and/or its connected systems related to drying, air filtration, and/or wastewater treatment and disposal;

b. Defendant has failed to manage, treat, mitigate, and/or control the noxious odors, air particulates and fugitive dust created by its paper-making process;

c. Defendant has failed to operate, and/or properly maintain its ventilation and exhaust emission and/or air and wastewater treatment systems;

d. Defendant has failed to mitigate, treat, and/or control odors and air particulates and fugitive dust from the intake, sorting, cleaning, storage, and processing of raw wastepaper and other raw materials used in its manufacturing processes;

e. Defendant has failed to properly operate, maintain, and/or clean its open-air clarifier and related waste systems;

f. Defendant has failed to properly store and treat its various waste materials, including raw materials, raw pulp, wastewater, and/or waste sludge.

g. Defendant has breached its duties in additional ways to be determined during discovery;

92. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' properties have been physically invaded by noxious odors, air particulates and fugitive dust.

93. As a direct and proximate result of Defendant's negligence in operating and/or maintaining its facility, Plaintiffs' properties have been exposed to and invaded by noxious odors, air particulates and fugitive dust.

94. As a direct and proximate result of the invasion of Plaintiffs' private residential properties by noxious odors, air particulates and fugitive dust, Plaintiffs have suffered physical property damage, including through diminution in property value, deprivation of full value of property, and interference with use and enjoyment of property.

17

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiffs and the Class members and against Defendant;

D. Award Plaintiffs and the Class members compensatory damages arising from the property damages they suffered and any recoverable attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E. Injunctive relief not inconsistent with Defendant's federally and state enforced air permits;

F. An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' property constituted negligence and nuisance; and

G. Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues raised in this Complaint.

Dated: September 1, 2020　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Steven D. Liddle
　　　　　　　　　　　　　　　　　　　　Laura L. Sheets
　　　　　　　　　　　　　　　　　　　　Matthew Z. Robb
　　　　　　　　　　　　　　　　　　　　LIDDLE & DUBIN, P.C.
　　　　　　　　　　　　　　　　　　　　975 E. Jefferson Avenue
　　　　　　　　　　　　　　　　　　　　Detroit, MI 48207

             (313) 392-0015
             sliddle@ldclassaction.com
             lsheets@ldclassaction.com
             mrobb@ldclassaction.com

             *Attorneys for Plaintiffs & the Putative Class*